UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW MEINNERT, et al., | No. 2:21-cv-01435-MCE-DB |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| CHRISTINE KARNOFSKY LANDSCAPE DESIGN, | |
| Defendant. | |

On August 9, 2021, Plaintiffs Andrew Meinnert and Stacey Elmore ("Plaintiffs"), individually and as Parents and Next Friends of their minor children, filed a Petition to Compel Arbitration against Defendant Christine Karnofsky ("Defendant"), the owner of Christine Karnofsky Landscape Design. ECF No. 1. Presently before the Court is Plaintiffs' Motion to Compel Arbitration, ECF No. 6, which has been fully briefed. ECF Nos. 6-1 ("Pls.' Mem."), 8 ("Def.'s Opp'n"), 9 ("Pls.' Reply"). Should the Court grant their Motion, Plaintiffs also seek attorney's fees and costs related to the arbitration. For the following reasons, Plaintiffs' Motion is GRANTED in part and DENIED in part.[1]

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Local Rule 230(g).

1

## BACKGROUND

"On or about May 1, 2018, the parties entered into a contract in which [Defendant] agreed to design, install, and supervise the landscape installation project at the Plaintiffs' residence 'to the completion of the project.'" ECF No. 1 ¶ 12; see Ex. 1, Frankowski Decl., ECF No. 6-2, at 6 (the "Agreement").  The Agreement, which was drafted by Defendant, provides, in relevant part, that "[a]ny dispute regarding this agreement shall be resolved by the parties through mediation and/or binding arbitration."  Id.  Plaintiffs allege that the patio installation was defective in numerous respects and that they repeatedly asked Defendant to fix the defects but to no avail.  Pls.' Mem., at 2.  Defendant allegedly denied any responsibility for the project and "refused to pay for the damages caused by the defects or for any further repairs."  Id. at 3.  According to Plaintiffs, they have incurred substantial out-of-pocket expenses due to Defendant's actions.  Id.

On September 15, 2020, pursuant to the Agreement, Plaintiffs' counsel emailed defense counsel asking if Defendant preferred mediation or arbitration.  Ex. 2, Frankowski Decl., ECF No. 6-2, at 8.  Defense counsel responded as follows:  "We would like to attempt to mediate the dispute first.  If we are unable to resolve the dispute via mediation, we can decide at that time whether we would like to arbitrate the dispute or let it go to court."  Id.  "After further emails about potential mediators and exchange of documents, and a holiday break, [defense counsel] emailed on January 5, 2021 to state that '[defense counsel and Defendant] do not want to mediate at this time,'" and that if Plaintiffs "still want to arbitrate this matter, . . . [the parties] are back to the drawing board in finding an arbitrator."  Frankowski Decl., ECF No. 6-2 ¶ 4; see also Ex. 3, id., at 10–15.  Shortly thereafter, on January 14, 2021, the parties agreed to David M. Doto of Hutchison & Steffen in Las Vegas, Nevada, as the arbitrator.  See Ex. 4, id., at 17–18.

On April 30, 2021, defense counsel emailed Plaintiffs' counsel, stating that they "need to put a hold on further discussions about possible dispute resolution unless and

until a site inspection [of Plaintiffs' property] is permitted," and that defense counsel "will let Doto know that [they] have not yet conclusively agreed to arbitrate . . . and [they] will get back to him if and when the parties decide to proceed with arbitration." Ex. 5, id., at 20.  Following said inspection, on May 17, 2021, defense counsel emailed Plaintiffs' counsel, stating that "[b]ased on the site inspection, [Defendant] does not agree to arbitrate."  Ex. 6, id., at 27.  When Plaintiffs' counsel asked if Defendant "put the arbitration clause in her contract," defense counsel responded as follows:  "The clause says mediation and/or arbitration.  We are not going to do either.  Do with that information what you will."  Ex. 7, id., at 29.

Plaintiffs filed an arbitration claim with the American Arbitration Association ("AAA") on June 18, 2021, but defense counsel reiterated that they "do not agree to participate in arbitration" absent a court order.  See Exs. 8–9, id., at 31–52, 54.  "On July 6, 2021, AAA informed the parties that it would not arbitrate the case unless both parties stipulated to AAA arbitration."  Pls.' Mem., at 4; see Ex. 10, Frankowski Decl., ECF No. 6-2, at 57–58.  In light of Defendant's refusal to arbitrate, on July 15, 2021, Plaintiffs' counsel notified the AAA that they were withdrawing their claim.  Ex. 11, id., at 60.  On August 9, 2021, Plaintiffs filed their Petition to Compel Arbitration in this Court.  See ECF No. 1.

## STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA, a party may seek a court order compelling arbitration where another party refuses to arbitrate.  Id. § 4.  Valid arbitration agreements must be "rigorously enforced."  Perry v. Thomas, 482 U.S. 483, 490 (1987).  To that end,

the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

"Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state or substantive or procedural policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). However, "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713 (2022) (citing Moses H. Cone, 460 U.S. at 24). This policy "is merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." Granite Rock Co. v. Int'l Broth. of Teamsters, 561 U.S. 287, 302 (2010) (citation and internal quotation marks omitted). In other words, "[t]he policy is to make arbitration agreements as enforceable as other contracts, but not more so." Morgan, 142 S. Ct. at 1713 (citation and internal quotation marks omitted); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24–25 (1991) (stating that the FAA's purpose was . . . to place arbitration agreements upon the same footing as other contracts," and recognizing a "liberal federal policy favoring arbitration agreements"). "[A] court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." Morgan, 142 S. Ct. at 1713.

Generally, in deciding whether a dispute is subject to an arbitration agreement, a court must answer two questions: (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130. Accordingly, the Court's role "is strictly limited to

determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991).

In determining the existence of an agreement to arbitrate, the district court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996). "[A]lthough 'courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions,' general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting Doctors Ass'n, Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (emphasis in original)). However, courts cannot apply even generally applicable defenses to contract enforceability, such as unconscionability, in a way that disfavors and undermines arbitration. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341–42 (2011). Finally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24–25. "An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 US. 574, 582–83 (1960).

## ANALYSIS

### A.     Motion to Compel Arbitration

Although she drafted the Agreement at issue, Defendant argues that it "does not mandate that the parties submit disputes to arbitration." Def.'s Opp'n, at 2 ("The policies

favoring agreements for arbitration of disputes are inapplicable where there is no actual agreement to arbitrate."). Defendant also contends that the Agreement "do[es] not require that the parties mediate any dispute now, before a lawsuit is filed," and that Defendant never agreed to waive her right to a jury trial. See id.

The Court is quite frankly perplexed as to Defendant's arguments. Defendant drafted the Agreement which explicitly states that "[a]ny dispute regarding this agreement shall be resolved by the parties through mediation and/or binding arbitration." Ex. 1, Frankowski Decl., ECF No. 6-2, at 6 (emphases added). According to Defendant, "[i]nclusion of the word 'or' in the phrase 'and/or' in the Contract Language thus plainly and unambiguously gives the parties the option to mediate or arbitrate a dispute, or to do both." Def.'s Opp'n, at 5, 8 ("The parties to this dispute contracted for the option of either mediating or arbitrating a dispute, and their arms-length contractual agreement should be respected.") (emphasis added). However, Defendant explicitly chose not to mediate. Defendant now claims in her Opposition that she "chose to exercise her unconditional right set forth in the Agreement to mediate the dispute rather than submit it to binding arbitration," see id. at 3–4, but this is contradicted by her express and repeated refusals to mediate.[2] See Ex. 3, Frankowski Decl., ECF No. 6-2, at 10 (email from defense counsel stating that "we do not want to mediate at this time."); Ex. 7, id., at 29 (affirming, in part, that Defendant will not do mediation). In so doing, binding arbitration was the only option left and Plaintiffs acted in accordance with the Agreement in seeking to arbitrate the matter. In fact, Defendant went so far as to discuss possible arbitrators with Plaintiffs and agreed to select Mr. Doto. See Exs. 3–5, id., at 9–25.

As for Defendant's argument that she never waived her right to a jury trial, "[t]he word 'shall' plainly does not leave the parties a third option." Pls.' Reply, at 2. If Defendant wanted to settle disputes through a lawsuit, then she should have written that

---

[2] Defendant also argues that "there is no requirement that the parties mediate a dispute as a condition to the filing of a lawsuit." Def.'s Opp'n, at 9 ("Put simply, nothing in the Agreement requires [Defendant] to mediate the dispute at this time."). The Court agrees, but because Defendant refused mediation, the alternative option per the Agreement is binding arbitration.

into her own Agreement rather than list binding arbitration which means having a third-party arbitrator decide disputes. See Pls.' Mem., at 8 ("In reality, [Defendant] not only agreed to give up such a right, but she also had [Plaintiffs] sign an agreement giving up their right to a jury trial as well.").

Defendant relies on an out-of-circuit case for "the proposition that an agreement providing that a party may choose either mediation or arbitration is not enforceable under the FAA." Def.'s Opp'n, at 5–6 (citing Advanced Bodycare Sol., LLC v. Thione Int'l, Inc., 524 F.3d 1235, 1240 (11th Cir. 2008) (stating "a dispute resolution clause that may be satisfied by arbitration or mediation, at the aggrieved party's option, is not 'an agreement to settle by arbitration a controversy' and thus is not enforceable under the FAA")). Although the Ninth Circuit has not yet ruled on whether this or similar statements are enforceable under the FAA, the Court does not find Advanced Bodycare persuasive, especially since Defendant is the one who drafted the Agreement and is refusing to comply with its terms. Compare 524 F.3d at 1237 (stating that the drafting party of the contract seeks to enforce the arbitration provision). As previously stated, the Agreement mandates mediation and/or binding arbitration, but Defendant refuses to do either, even though this is her Agreement. It would be unfair to disregard that provision in the Agreement, especially since Defendant declined mediation, seemingly chose arbitration, and agreed on an arbitrator before changing her mind after a site inspection of Plaintiffs' property. Overall, because Defendant expressly refused to participate in mediation, the only option left is binding arbitration. As such, Plaintiffs' Motion to Compel is GRANTED.

**B.    Attorney's Fees and Costs Related to Arbitration**

Plaintiffs also request that Defendant "be ordered to pay [their] reasonable litigation fees and costs in this petition arising from [Defendant's] bad faith refusal to participate in the alternative dispute resolution called for by its own agreement." See Pls.' Mem., at 9–10 (citing Cal. Civ. P. Code § 1281.97(a), (b)(2)). Under California Code of Civil Procedure § 1281.97, in a "consumer arbitration that requires, either

expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed," but who fails to do so within 30 days of the due date, the drafting party is subject to certain penalties.  However, Plaintiffs have not cited any state or federal law, rules of the arbitration provider, or any basis requiring Defendant to pay arbitration fees and costs.  See Def.'s Opp'n, at 10.  Plaintiffs did not address any of Defendant's contentions relating to fees and costs in their Reply brief, so the Court assumes that Plaintiffs abandoned this request.  Accordingly, Plaintiffs' request for fees and costs related to the arbitration is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Arbitration, ECF No. 6, is GRANTED in part and DENIED in part.  Plaintiffs' Motion to Compel Arbitration is GRANTED but their request for attorney's fees and costs related to the arbitration is DENIED.  This action is hereby STAYED pending the completion of arbitration in this matter.  Not later than ninety (90) days from the issuance of this Memorandum and Order, and every ninety (90) days hereafter until the stay is lifted, the parties shall file a joint status report as to the arbitration proceedings.

IT IS SO ORDERED.

Dated:  April 27, 2023

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE